UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SOUTHERN GLAZER'S WINE AND SPIRITS, LLC; SOUTHERN GLAZER'S WINE AND SPIRITS OF MINNESOTA, LLC,<br><br>      Plaintiffs,<br><br>v.<br><br>JOHN HARRINGTON, in his capacity as Commissioner of the Minnesota Department of Public Safety,<br><br>      Defendant. | Case No. _____<br><br><br>**COMPLAINT** |

## INTRODUCTION

1. This is a constitutional challenge to the Coleman Act, Minn. Stat. § 340A.307, a Minnesota statute that discriminates in favor of in-state liquor producers in violation of the dormant Commerce Clause. The State of Minnesota—through its Attorney General and Commissioner of Public Safety—agrees that the Coleman Act is unconstitutional. In conjunction with this Complaint, the parties are filing a stipulated order for final judgment that declares the Coleman Act to be in violation of the U.S. Constitution and enjoins any future enforcement of the statute against Plaintiffs.

2. Enacted in 1973, the Coleman Act prohibits out-of-state liquor producers from granting exclusive distribution rights to licensed wholesalers in Minnesota. Neither the Coleman Act nor any other statute denies that choice to in-state producers, and the Minnesota legislature has never articulated a legitimate, local reason for giving in-state

producers greater freedom in distributing their products. The Coleman Act thus grants in-state producers access to customers on preferential terms without justification.

3. Shortly after the Coleman Act was enacted, the Supreme Court of Minnesota upheld its validity under both the Minnesota Constitution and the United States Constitution. *Fed. Distillers, Inc. v. State*, 229 N.W.2d 144, 155–56 (Minn. 1975). That decision is no longer good law. In 2005 and again in 2019, the United States Supreme Court clarified how the dormant Commerce Clause applies to state laws regulating the distribution of alcohol. Under now-settled precedent, a state law violates the dormant Commerce Clause if (1) it discriminates in favor of in-state producers, and (2) the state fails to establish a legitimate local interest that cannot be achieved through reasonable, nondiscriminatory alternatives. *Granholm v. Heald*, 544 U.S. 460, 489 (2005); *accord Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2474–76 (2019) (reaffirming *Granholm* and holding that state cannot show that law's "predominant effect" is to protect a legitimate state interest where there are "obvious alternatives that better serve" the state's goals).

4. The Coleman Act plainly discriminates in favor of in-state producers, and there is no conceivable "local interest" that would justify allowing Minnesota producers to use exclusive distributors while denying that right to their out-of-state competitors. Accordingly, the Coleman Act violates the dormant Commerce Clause. Plaintiffs respectfully ask the Court to declare this statute unconstitutional and enjoin Defendant from enforcing it.

**PARTIES**

5.  Plaintiff Southern Glazer's Wine and Spirits, LLC ("Southern Glazer's") is a Delaware limited liability company with its principal place of business in Miami, Florida. Southern Glazer's is the largest wine and spirits distributor in the United States, with operations in forty-four states, including Minnesota.

6.  Plaintiff Southern Glazer's Wine and Spirits of Minnesota, LLC ("Southern Glazer's of Minnesota") is a Florida limited liability company with a principal place of business in Minneapolis, Minnesota. Southern Glazer's of Minnesota is a wholly-owned subsidiary of Southern Glazer's and has distributed wine and spirits to Minnesota retailers since 2010.

7.  Southern Glazer's of Minnesota is licensed to sell intoxicating malt liquor at wholesale in the State of Minnesota. Pursuant to its wholesaler license, Southern Glazer's of Minnesota may sell intoxicating liquor to licensed retailers in Minnesota.

8.  Defendant John Harrington is the Commissioner of the Minnesota Department of Public Safety ("Commissioner of Public Safety") and is sued only in his official capacity. Commissioner Harrington maintains his principal office in St. Paul, Minnesota.

9.  The Commissioner of Public Safety is the senior official in Minnesota's Department of Public Safety and has the authority to enforce Minnesota's statutes and regulations pertaining to alcoholic beverages, including the Coleman Act.

## JURISDICTION AND VENUE

10. This is a civil action challenging the constitutionality of a Minnesota state statute under the United States Constitution, and it seeks to redress a deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution of the United States. Plaintiffs also seek equitable relief and attorney's fees under federal civil rights laws. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4). This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

11. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims arose within this district. Venue is also proper under § 1391(b) because Defendant maintains his office and resides in this district.

## FACTUAL BACKGROUND

**A. Minnesota's Coleman Act discriminates against out-of-state liquor producers.**

12. All fifty states employ some form of a three-tier system of liquor regulation. Under a three-tier system, manufacturers, wholesalers, and retailers have separate licensing requirements, and a firm licensed to do business at one level of the distribution chain is typically prohibited from doing business at the others. Thus, in a typical three-tier scheme, a manufacturer cannot sell directly to retailers, but must instead sell to wholesalers. Likewise, a wholesaler cannot sell directly to consumers, but must sell to retailers.

13. Minnesota has its own version of a three-tier regulatory scheme. With minor exceptions, a manufacturer or wholesaler generally cannot hold a retail liquor license, and a retailer cannot own a manufacturer, importer, or wholesaler of alcoholic beverages.

14. Like many states, Minnesota's alcohol regulations vary by beverage type. This case is only about hard liquor (*i.e.*, distilled spirits), as the Coleman Act does not apply to wine or beer.

15. Prior to 1969, Minnesota law permitted liquor manufacturers to grant exclusive distribution contracts, known as "franchises," to wholesalers. In 1969, however, the legislature passed Minn. Stat. § 340.984, which prohibited all exclusive distribution contracts.

16. As summarized by the Minnesota Supreme Court, the 1969 legislation was ineffective, since "distillers and wholesalers found it to their advantage to continue the practice of sole distributorships by the distillers, declaring that they had no agreement to do so but simply chose in their discretion to limit sales to a wholesaler of demonstrated loyalty, efficiency, and selling ability." *Fed. Distillers*, 229 N.W.2d at 153.

17. Accordingly, in 1973, the Minnesota legislature passed the Coleman Act, which is now codified at Minn. Stat. § 340A.307. Unlike its predecessor statute, the Coleman Act does not directly ban exclusive contracts. Instead, the Coleman Act requires liquor producers to offer their products on equal terms to all wholesalers. This open wholesaling requirement makes it unlawful for producers to grant exclusive distribution franchises.

18.     Critically, the Coleman Act applies only to *out-of-state* liquor. Subdivision 1 provides: "All licensed *importers* must offer for sale on an equal basis to all licensed wholesalers and manufacturers all intoxicating liquor *brought into the state of Minnesota*." Minn. Stat. § 340A.307, subdiv. 1 (emphasis added). Nothing in the Coleman Act applies to liquor distilled within Minnesota. In-state distillers are thus free to grant exclusive distribution franchises if they wish to sell their products through a single wholesaler.

19.     Minnesota distillers are not the only in-state producers exempt from the Coleman Act. In 1975, before the statute took effect, the Supreme Court of Minnesota held that the term "licensed importer" applied to Ed Phillips & Sons, a company that imported bulk liquor, rectified and bottled it in the state, and sold the finished product under its own brand "as the sole wholesale distributor." *Fed. Distillers*, 229 N.W.2d at 155–56. In 1984, however, the Minnesota legislature amended the Coleman Act to exclude liquor that is further "distilled, refined, rectified, or blended" within the state and sold under the importer's own label. Minn. Stat. § 340A.307, subdiv. 4. The purpose of this amendment was to exempt Phillips, a prominent Minnesota company, from the requirements of the Coleman Act. And the result is that all Minnesota liquor brands may grant exclusive distribution franchises—regardless of whether the liquor is distilled within the state—while all out-of-state brands may not.

20.     In its current form, the Coleman Act prohibits out-of-state liquor producers from entering into exclusive distributorships, but permits in-state producers (whether distillers or rectifiers) to distribute their liquor as they see fit. The Coleman Act thus discriminates in favor of in-state producers by giving them access to consumers on

6

"preferential terms." *Granholm*, 544 U.S. at 474; *see also Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 273 (1984) (holding that excise tax on out-of-state alcohol violated dormant Commerce Clause because it "had both the purpose and effect of discriminating in favor of local products").

**B.     Minnesota has no legitimate local purpose for discriminating in favor of in-state producers.**

21.     Under U.S. Supreme Court precedent, once a plaintiff shows that a state law discriminates against interstate commerce, the burden shifts to the state to establish a legitimate local interest that cannot be achieved through reasonable, nondiscriminatory alternatives. *Granholm*, 544 U.S. at 489; *accord Tenn. Wine & Spirits*, 139 S. Ct. at 2476 (striking down law due to "obvious alternatives that better serve [the state's] goal without discriminating against nonresidents").

22.     Defendant cannot carry this burden. As the *Federal Distillers* case makes clear, the "implicit design" of the Coleman Act was "to abolish sole distributorships and thereby promote intrabrand price competition." 229 N.W.2d at 153. But that goal does not justify a regulatory scheme that *permits* in-state producers to grant exclusive franchises while denying that right to out-of-state producers. If the goal was to banish sole distributorships or otherwise promote intrabrand competition, the legislature could have done so evenhandedly.[1]

---

[1] Though not relevant to the constitutional analysis, it bears noting that the legislature's economic logic was controversial in 1973, when it passed the Coleman Act. Within years, it was obsolete. By the late 1970s, advancements in economic scholarship related to exclusive distributorships (and other "vertical" agreements between firms at different levels of the supply chain) had established that such arrangements are often beneficial to

7

**C.     Plaintiffs and their customers have been injured by the Coleman Act's discriminatory ban on exclusive distribution franchises.**

23.     Southern Glazer's and Southern Glazer's of Minnesota wish to serve as the exclusive Minnesota wholesaler for at least one out-of-state liquor brand.

24.     The Coleman Act's discriminatory ban on exclusive distribution franchises has thus injured both companies by, among other things, reducing their revenues and profits in Minnesota and harming their business relationships with customers.

25.     But for the Coleman Act, Plaintiffs would already have the right to serve as exclusive Minnesota wholesalers for out-of-state brands.  Southern Glazer's, for example, has multiple contracts that grant its subsidiaries exclusive franchises in multiple states, including Minnesota.  Because those contracts contain exclusions to ensure compliance with state laws, the exclusivity provisions are currently unenforceable in Minnesota.  If the Court were to grant Plaintiffs' request for declaratory and injunctive relief, those provisions would become enforceable and Southern Glazer's of Minnesota would immediately obtain exclusive Minnesota distribution rights for those brands.

26.     Plaintiffs' out-of-state suppliers—*i.e.*, producers who use Plaintiffs as their exclusive distributors—have also been injured by the Coleman Act's discriminatory ban on exclusive distribution franchises.  Producers that use exclusive distributors do so because they believe exclusive franchises are the most efficient and/or effective way to distribute their products.  As noted above, exclusive franchises offer tremendous value to

---

competition and consumers—a fact recognized by the U.S. Supreme Court in *Continental Television v. GTE Sylvania*, 433 U.S. 36 (1977).  Unsurprisingly, Minnesota is the *only* state that bans exclusive liquor franchises.

8

producers by encouraging distributors to invest in marketing, promotion, and service quality. Thus, by denying out-of-state producers the option to use exclusive franchises, the Coleman Act has harmed Plaintiffs' out-of-state suppliers by increasing their costs, decreasing their revenues and profits, and impairing the value of their brands.

## COUNT I – DECLARATORY JUDGMENT

27. This case involves an actual controversy between Plaintiffs and Defendant regarding the constitutionality of the Coleman Act, Minn. Stat. § 340A.307.

28. The Coleman Act's discriminatory ban on exclusive distribution franchises has injured Plaintiffs' and their customers' right to engage in interstate commerce and denied Plaintiffs' customers of their right to equal protection of the laws. Defendant's continued enforcement of this statute against Plaintiffs and/or its customers constitutes an ongoing violation of both the Commerce Clause, Article I, § 8, of the United States Constitution, and the Equal Protection Clause, Amendment XIV, of the United States Constitution.

29. For the reasons stated above, Plaintiffs are entitled to a declaration that the Defendant, the State of Minnesota, and its Department of Public Safety are estopped from enforcing Minn. Stat. § 340A.307 against Plaintiffs. Plaintiffs are further entitled to a declaration that the open wholesaling requirement of Minn. Stat. § 340A.307, subdiv. 1, is invalid and unenforceable under the Commerce Clause and the Equal Protection Clause of the United States Constitution.

## COUNT II – VIOLATION OF THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

30. Defendant is responsible for enforcing the Coleman Act's discriminatory requirement of open wholesaling against Plaintiffs and/or Plaintiffs' customers.

31. Defendant's actions, under the color of state law, foreseeably deprived Plaintiffs and their customers of the right to engage in interstate commerce, in violation of the Commerce Clause, Article I, § 8, of the United States Constitution. Defendant's actions, under the color of state law, foreseeably deprived Plaintiffs' suppliers, who constitute customers of Plaintiffs to the extent they utilize Plaintiffs' distribution and wholesaling services, of their right to equal protection of the laws, in violation of the Equal Protection Clause, Amendment XIV, of the United States Constitution.

32. As a result of these deprivations in violation of the United States Constitution, Plaintiffs are entitled to relief under 42 U.S.C. § 1983. Specifically, Plaintiffs are entitled to injunctive relief prohibiting Defendant from enforcing the Coleman Act's open wholesaling requirement. Without relief from this Court, Defendant, acting under color of state law, will continue to subject Plaintiffs and their customers to the deprivation of rights guaranteed by the United States Constitution.

## COUNT III – EQUITABLE AND ANCILLARY RELIEF

33. Plaintiffs are entitled to equitable and ancillary relief, including a preliminary and permanent injunction against Defendant, the Minnesota Department of Public Safety, and/or their agents and employees from enforcing the open wholesaling requirement of the Coleman Act against Plaintiffs and Plaintiffs' customers.

34. Permanent injunctive relief is justified because Plaintiffs and their customers have no plain, adequate, or complete remedy to redress the deprivations of their constitutional rights other than through injunctive relief.

35. Preliminary injunctive relief is justified because: (1) Plaintiffs are likely to succeed on the merits of their claims; (2) the continued enforcement of the Coleman Act will cause Plaintiffs irreparable harm; (3) the balance of hardships weighs in favor of granting preliminary injunctive relief; and (4) enjoining the enforcement of the cited statutory provisions is in the public interest.

36. Pursuant to 28 U.S.C. § 2202 and the Court's equitable powers under 42 U.S.C. § 1983 and other federal law, this Court should grant Plaintiffs' request for preliminary and permanent injunctive relief, enjoining Defendant, the Minnesota Department of Public Safety, the Minnesota Division of Alcohol and Gambling Enforcement and/or their agents and employees from enforcing the open wholesaling requirement of the Coleman Act against Plaintiffs and Plaintiffs' customers.

## COUNT IV – CLAIM FOR ATTORNEYS' FEES

37. This is an action to enforce Plaintiffs' constitutional and civil rights under 42 U.S.C. § 1983.

38. An award of reasonable attorneys' fees as part of Plaintiffs' costs is therefore justified under 42 U.S.C. § 1988(b). Plaintiffs' claim for attorneys' fees is cumulative, and therefore increases the longer it takes to resolve this dispute.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request that Defendant be cited to appear and answer the allegations made in this Complaint. Plaintiffs further request:

A. That, after a hearing, the Court enter a preliminary injunction prohibiting Defendant, the Minnesota Department of Public Safety, the Minnesota Division of Alcohol and Gambling Enforcement and/or their agents and employees from enforcing the open wholesaling requirement of the Coleman Act, Minn. Stat. § 340A.307, subdiv. 1, against Plaintiffs and Plaintiffs' customers;

B. That, upon final hearing, the Court enter an injunction permanently enjoining Defendant, the Minnesota Department of Public Safety, the Minnesota Division of Alcohol and Gambling Enforcement and/or their agents and employees from enforcing the open wholesaling requirement of the Coleman Act, Minn. Stat. § 340A.307, subdiv. 1, against Plaintiffs and Plaintiffs' customers;

C. That the Court enter a final judgment declaring that the open wholesaling requirement of the Coleman Act, Minn. Stat. § 340A.307, subdiv. 1, is invalid under the Commerce Clause and Equal Protection Clause of the United States Constitution; and

D. That the Court award Plaintiffs' reasonable attorneys' fees and costs under 42 U.S.C. § 1988(b).

| | |
|---|---|
| Dated: 5/19/2021 | */s/ Peter J. Schwinger* <br> Peter J. Schwinger (#0388909) <br> James A. Schoeberl (#0398248) <br> STINSON LLP <br> 50 South Sixth Street, Suite 2600 <br> Minneapolis, Minnesota 55402 <br> Telephone:  (612) 335-1500 <br> Facsimile:   (612) 335-1657 <br> peter.schwingler@stinson.com <br> james.schoeberl@stinson.com <br><br> **ATTORNEY FOR PLAINTIFFS SOUTHERN GLAZER'S WINE AND SPIRITS, LLC AND SOUTHERN GLAZER'S WINE AND SPIRITS OF MINNESOTA, LLC** |