# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| SOUTHERN GLAZER'S WINE AND SPIRITS, LLC, AND SOUTHERN GLAZER'S WINE AND SPIRITS OF MINNESOTA, LLC, | Civil No. 21-1254 (JRT/ECW) |
| Plaintiffs, | |
| v. | |
| JOHN HARRINGTON, *in his capacity as Commissioner of the Minnesota Department of Public Safety*, | **MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| Defendant, | |
| v. | |
| JOHNSON BROTHERS LIQUOR COMPANY, AND BELLBOY CORPORATION, | |
| Intervenor Defendants. | |

Peter J. Schwingler and William Thomson, **STINSON LEONARD STREET LLP**, 50 South Sixth Street, Suite 2600, Minneapolis, MN 55402, for plaintiffs;

Jason Marisam, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for defendant;

Forrest Tahdooahnippah, Nicholas J. Bullard, Steven J. Wells, and Vanessa J. Szalapski, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402; James T. Smith, **HUFFMAN, USEM, CRAWFORD & GREENBERG, PA**, 5101 Olson Memorial Hwy., Suite 1000, Golden Valley, MN 55422, for intervenor defendants.

Daniel N. Rosen, **ROSEN LLC**, 60 South Sixth Street, Suite 3615, Minneapolis, MN 55402, for amicus curiae Kick's Liquor Store, Inc., Zipp's Liquor Store,

Inc., John Wolf Enterprises, Inc., JPG Corporation, and Keith and Linda's Place, Inc.

Plaintiffs Southern Glazer's Wine and Spirits, LLC and Southern Glazer's Wine and Spirits of Minnesota, LLC (together, "Southern") brought this action against Defendant John Harrington in his capacity as Commissioner of the Minnesota Department of Public Safety ("the State") alleging that Minn. Stat. § 340A.307—otherwise known as the Coleman Act—unconstitutionally violated the dormant Commerce Clause.  After a thorough review by the Minnesota Attorney General's Office, the State agreed that the Coleman Act was unconstitutional.  Southern and the State filed a Joint Motion for Entry of Stipulated Judgment and Permanent Injunction prohibiting the State from enforcing the Coleman Act against Southern.  Intervenor Defendants Johnson Brothers Liquor Company and Bellboy Corporation (together, "Intervenors") intervened in this action with the intention of defending the Coleman Act's constitutionality.[1]

The case is before the Court on both Southern's Motion for Judgment on the Pleadings and Southern and the State's Joint Motion for Entry of Judgment.  Because the Coleman Act violates the dormant Commerce Clause, the Court will grant Southern's Motion for Judgment on the Pleadings.  The Court will use its inherent authority to stay this Order for 60 days because legislation pending before the Minnesota Legislature may moot the current controversy.

---

[1] Sunny Hill Distributors, Inc. was also an Intervenor Defendant but has since withdrawn from this action.  (Order on Stip. Withdrawal, Mar. 24, 2022, Docket No. 164.)

## BACKGROUND

### I.   THE PARTIES

Southern is the nation's largest liquor wholesaler and entered the Minnesota market in 2010.  (Compl. ¶¶ 5–6, May 19, 2021, Docket No. 1.)  Although Southern is not directly subjected to any alleged unconstitutional discrimination, Southern has multiple contracts with out-of-state producers that are regulated by the Coleman Act.  (*Id*. ¶ 25.) Southern's contracts with out-of-state producers contain language giving it exclusive distribution rights in Minnesota but, pursuant to the Coleman Act's allegedly discriminatory language, Southern is unable to enforce these rights as out-of-state producers are banned from establishing exclusive distributorships and must offer their products equally to all wholesalers.  Minn. Stat. § 340A.307, subd. 1; (Decl. Surelda Heard ("Heard Decl."), Exs. A–D, Oct. 12, 2021, Docket No. 88.).

The State agrees with Southern that the Coleman Act is unconstitutional after reviewing this Court's decision in *Alexis Bailly Vineyard, Inc. v. Harrington*, 482 F.Supp.3d 820 (D. Minn. 2020).  In *Alexis Bailly*, portions of Minnesota's Farm Winery Act were found unconstitutional under the dormant Commerce Clause for treating out-of-state products differently than their instate counterpart.  482 F.Supp.3d at 828.  Rather than defend what it determined was an unconstitutional law, the State sought to resolve Southern's challenge and avoid the inefficient use of resources prolonged litigation would require. (Reply Supp. Joint Mot. at 2, Dec. 15, 2021, Docket No. 128.)

Intervenors are Minnesota-based wholesalers seeking to defend the Coleman Act against Southern's constitutional challenge due to the allegedly devastating financial effects their businesses would suffer. (Decl of David Gewolb[2] Supp. Mot. Intervene ¶¶ 2, 5, June 4, 2021, Docket No. 22; Decl.of Mark Hubler Supp. Mot. Intervene ¶¶ 7–9, June 4, 2021, Docket No. 24.)

## II.   THE COLEMAN ACT

Minnesota, like most states, employs a "three-tier system" to regulate alcohol classified by the separation of manufacturers, wholesalers, and retailers through licensing requirements. (Intervenor Defs.' Mem. Opp. Mot. J. Pleadings at 4, Nov. 17, 2021, Docket No. 113.) In a three-tier system, a manufacturer cannot sell directly to retailers and instead sells to wholesalers while wholesalers cannot sell directly to consumers and subsequently sell to retailers. *See Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2457 (2019). The three-tiered system has routinely been upheld and is "unquestionably legitimate." *Granholm v. Herald*, 544 U.S. 460, 489 (2005).

In its current form, the Coleman Act prohibits exclusive distribution agreements for alcohol produced outside of Minnesota and instead requires that the products be offered on an equal basis to all wholesalers—a practice known as open wholesaling.

---

[2] Although it appears that the correct spelling is "Geowolb" based upon the declaration's signature page, the Court has referenced the declaration as it was titled when filed for clarity of the record.

Minn. Stat. § 340A.307, subd. 1.  Open wholesaling has not always been a requirement in Minnesota as exclusive distributorships were previously permitted.  *Fed. Distillers Inc. v. State*, 229 N.W.2d 144, 152–53 (Minn. 1975).  However, the Minnesota Legislature became concerned about exclusive distribution under which a "retailer . . . in order to sell a particular brand of liquor, was compelled to deal with a particular wholesaler and to pay that wholesaler's price" and passed legislation prohibiting exclusive distributorships in 1969.  *Id.* at 153 n. 10 (quoting Minn. Stat. § 340.984).  The 1969 legislative effort initially proved to be ineffective because "distillers and wholesalers found it to their advantage to continue the practice of sole distributorships by the distillers, declaring that they had no agreement but simply cho[osing] in their discretion to limit sales to a wholesaler of demonstrated loyalty, efficiency, and selling ability." *Id*. at 152.  Therefore, the Minnesota Legislature attempted to remedy its previous failure and passed the Coleman Act in 1973.

Under the Coleman Act, only out of-state liquor producers must offer their products on equal terms to all wholesalers.  Minn. Stat. § 340A.307, subd. 1 ("All licensed importers must offer for sale on an equal basis to all licensed wholesalers and manufacturers all intoxicating liquor brought into the state of Minnesota.")  After the Minnesota Supreme Court held in *Fed. Distillers* that the term "licensed importer" applied to a company that imported bulk liquor, rectified and bottled it in the state, the Minnesota Legislature amended the Coleman Act to explicitly exempt products that

further are "distilled, refined, rectified, or blended" liquor within the state. Minn. Stat. § 340A.307, subd. 4. As it stands, the Coleman Act currently imposes open wholesaling on out-of-state producers and products while exempting Minnesota producers and products and allowing the latter to establish exclusive distributorships.

III.   **PROCEDURAL BACKGROUND**

On May 19, 2021, Southern filed the Complaint in this case seeking both a declaration that the Coleman Act is unconstitutional and an injunction against future enforcement. (Compl. ¶¶ 27–36.) After this Court's ruling in *Alexis Bailly Vineyard*, Southern contacted the State and inquired about the Coleman Act's constitutionality. (Pls.' Mem. Supp. Mot. J. Pleadings at 3, October 12, 2021, Docket No. 86.) The State agreed that the Coleman Act violated the dormant Commerce Clause. (*Id.*) Accordingly, Southern filed this Complaint and the parties filed a Joint Motion for Stipulated Judgment, asking the Court to enter the requested declaratory judgment and injunction. (*Id.* at 3–4; Joint Mot. Stip. J, May 21, 2021, Docket No. 10.)

Intervenors moved to intervene as defendants due to their interest in defending the Coleman Act. (Intervenor Mem. Supp. Mot. Intervene at 3–4, June 4, 2021, Docket No. 20.) After successfully intervening, Intervenors requested the Court stay the case until the end of the 2022 legislative session to permit the Minnesota Legislature to consider proposed amendments to the Coleman Act. (Mot. Stay at 1, Aug. 13, 2021,

Docket No. 45.)  On September 10, the Magistrate Judge denied Intervenors' Motion.

(Order Denying Mot. Stay, Sept. 29, 2021, Docket No. 68.)[3]

Intervenors also requested that the Court allow them to amend their pleadings

to assert crossclaims seeking declaratory judgments that (1) the Coleman Act is

constitutional and (2) can be preserved through severance.  (Mot. Am., Ex. B, Nov. 1,

2021, Docket No. 102.)  The Magistrate Judge denied Intervenors' Motion because "the

Intervenor Defendants all but admit their crossclaims are redundant of the factual and

legal issues already in the case."  (Order Denying Mot. Am. at 5, Dec. 7, 2021, Docket

No. 121.)[4]

While Southern and the State's Joint Motion was pending, Southern filed a

Motion for Judgment on the Pleadings and all of the relevant parties agreed to a briefing

schedule permitting a single hearing on the Joint Motion and Southern's Motion for

relief under Rule 12(c).  (Stip. Briefing Schedule, Sept. 29, 2021, Docket No. 66; Pls.' Mot.

J. Pleadings, Oct. 12, 2021, Docket No. 84.)

---

[3]Intervenors objected to the Magistrate Judge's Order.  (Intervenor Defs.' Objs. Order Mot. Stay, Oct. 13, 2021, Docket No. 92.)  However, because of this Order, the Intervenors' objections are moot.

[4]Intervenors also objected to the Magistrate Judge's Order denying their Motion to Amend.  (Intervenor Defs.' Objs. Order Mot. Am., Jan. 03, 2022, Docket No. 132.)  Even if the Court were to reach a different conclusion than the Magistrate Judge, this Order moots their proposed crossclaims and objections.

**DISCUSSION**

## I.   STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court analyzes a motion for judgment on the pleadings under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Ashley Count, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The Court "accept[s] as true all facts pleaded by the non-moving party and grant[s] all reasonable inferences from the pleadings in favor of the non-moving party." *Syverson v. FirePond, Inc.*, 383 F.3d 745, 749 (8th Cir. 2004). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006).

"When considering a motion for judgment on the pleadings . . . , the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (cleaned up).

## II.   STANDING

Intervenors contend that Southern lacks standing to bring this action because its injury is not redressable and the third-party standing doctrine bars Southern's claims. The

Court must therefore first determine whether Southern has standing to request the relief it seeks.

### A. Redressability

Assuming the Coleman Act is found unconstitutional, Intervenors argue that the Coleman Act is severable, and the invalid discriminatory provisions would be severed such that Southern would still be prohibited from exercising its exclusive distribution rights.

Article III of the Constitution limits the jurisdiction of federal courts to deciding cases and controversies. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). Standing is essential to the case-or-controversy requirement. *Id.* at 560. To establish standing, a plaintiff must show (1) that it suffered a concrete and particularized injury-in-fact that is actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that it is likely the plaintiff's injury will be redressed by the remedy. *Id.* at 560–61. "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury suffered.'" *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (citation omitted).

In the Eighth Circuit, the general rule requires assuming that a plaintiff would be successful in their claims. *Graham v. Catamaran Health Sols. LLC*, 940 F.3d 401, 407–08 (8th Cir. 2017). "Therefore, if a claim presents a question of statutory interpretation under which one interpretation leads to possible relief and the other does not, standing exists." *Id*. However, redressability must be established by more than a "merely speculative"

showing that the court can grant relief to redress the plaintiff's injury. *Advantage Media v. Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006).

As discussed *infra*, the Court finds that the Coleman Act is not severable. Accordingly, Southern's injury is redressable because a favorable decision finding that the Coleman Act is unconstitutional would eliminate the prohibition on exclusive distributorships.

### B. Third-Party Standing

Intervenors also contend that Southern lacks standing because it is not directly regulated by the Coleman Act and Southern cannot challenge the law by asserting the rights of third parties.

"[O]nly in exceptional cases may a party have standing to assert the rights of another." *Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin Cty.*, 115 F.3d 1372, 1378–79 (8th Cir. 1997). Plaintiffs alleging a violation of a constitutional or statutory right must show that their interests are arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. *Id*. "In Commerce Clause jurisprudence, cognizable injury is not restricted to those members of the affected class against whom states or their political subdivisions ultimately discriminate." *S.D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 591–92 (8th Cir. 2003).

Though Intervenors are correct that the Coleman Act regulates out-of-state liquor producers and that Southern is not directly regulated, the Court finds that Southern has

standing because its interest in exercising its exclusive distribution contracts with out-of-state producers is firmly within the zone of interests under the dormant Commerce Clause. *Hazeltine*, 340 F.3d at 592 (finding that loss of business as a result of a challenged statute satisfied the injury-in-fact requirement); *Ben Oehrleins,* 115 F.3d at 1379 (finding sufficient injury-in-fact where county ordinance prohibited plaintiffs from gaining access to a market).

## III.    DOCUMENTS OUTSIDE THE PLEADINGS

Intervenors argue next that Southern's request for Rule 12(c) relief should be converted to a motion for summary judgement because Southern relies on documents outside of the pleading.   Specifically, Intervenors contend that the four contracts Southern attached to a declaration supporting its Motion for Judgment on the Pleadings are not embraced by its Complaint and are inappropriate for this Court to rely on without converting the motion to one for summary judgment.  (Heard Decl., Exs. A–D ("Southern contracts").)

"In general, materials embraced by the complaint include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'"  *Zean v. Fairview Health Servs.,* 858 F.3d 520, 526 (8th Cir. 2017) (citation omitted).

Although Southern attached examples of it contracts to a declaration and not to its Complaint, the Southern contracts were sufficiently alleged in and embraced by the

Complaint.  (Compl. ¶ 25.)  Additionally, Intervenors have not argued that the Southern contracts are fake or otherwise unreliable.  The Court finds that the Southern contracts are not outside the pleadings and declines to convert the pending motion to one for summary judgment.

## IV.   INTERVENORS' AFFIRMATIVE DEFENSES

Intervenors alternatively allege that their affirmative defenses preclude Southern's requested relief.  "When a defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings."  *Lasser v. Am. Gen. Life Ins. Co.*, No. 14-3326, 2015 WL 12778004, at *4 (D. Minn. Apr. 3, 2015).  "A grant of judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law."  *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008).  Because Intervenors' affirmative defenses raise no material issues of fact, the Court will not deny Southern's Motion.

### A.  Statute of Limitations

Intervenors argue that Southern's constitutional claims are barred by the statute of limitations because Southern entered the market in 2010 and did not challenge the Coleman Act until 2021.  Southern does not contest this fact but alleges that the Coleman Act's unconstitutional restrictions constitute a continuing harm.

"[A] 'constitutional claim can become time-barred just as any other claim can[.]"  *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 9 (2008) (quoting *Block*

*v. North Dakota*, 461 U.S. 273, 293 (1983)).  However, continuing violations of law, which inflict continuing and accumulating harm, can provide relief from a statute of limitation's effects.  *Hanover Shoe, Inc. v. United Shoe Mach. Corp*., 392 U.S. 481, 502 n.15 (1968) ("We are not dealing with a violation which, if it occurs at all, must occur within some specific and limited time span. . . . Rather, we are dealing with conduct which constituted a continuing violation of the Sherman Act and which inflicted continuing and accumulating harm[.]"); *Montin v. Est. of Johnson*, 636 F.3d 409, 416 (8ᵗʰ Cir. 2011) ("[Plaintiff] appears to allege, however, that he suffers daily and unconstitutional restrictions of his liberty of movement .  .  .  .  His claim, therefore, may be akin to a prisoner's Eighth Amendment claim or claims involving repeated enforcement of policies against a plaintiff rather than claims alleging merely ongoing consequences from an older, challenged action.").

Here, Southern alleges that the Coleman Act's allegedly discriminatory provisions produce a continual harm.  Southern's claims therefore rest on continual violations resulting in an inability to enforce otherwise valid provisions of its contracts.  The inapplicability of statutes of limitations to on-going and continuous harm is clearly established and Intervenors' statute of limitations defense does not raise issue of material fact sufficient to preclude Rule 12 relief.

### B.  Laches and Waiver

Intervenors argue that both laches and waiver bar Southern's relief.  The equitable

doctrine of laches may permit dismissal of a claim if there is both an unreasonable delay and some change in position in reliance upon the delay which makes maintenance of the claim inequitable. *In re Panther Mountain Land Dev., LLC,* 686 F.3d 916, 927 (8th Cir. 2012). Similarly, under Minnesota law, a waiver is "an intentional relinquishment of a known right, and it must clearly be made to appear from the facts disclosed." *Slidell, Inc. v. Millennium Inorganic Chems., Inc.*, 460 F.3d 1047, 1055 (8th Cir. 2006) (citation omitted); *W. Cas. & Sur. Co. v. Beverforden*, 93 F.2d 166, 169 (8th Cir. 1937) ("A waiver is a voluntary relinquishment of a known right, the intended giving up of a known privilege or power.").

Here, Intervenors have not pled any change in reliance base upon Southern's alleged delay in challenging the Coleman Act. While Intervenors claim that they have conformed their businesses to account for open wholesaling over the last forty years, such allegations do not demonstrate that Intervenors changed their positions in reliance on Southern's actions. Instead, Intervenors' argument concedes that they have not made any changes and have simply maintained the status quo. Similarly, Intervenors have not identified any facts demonstrating Southern intentionally relinquished a "known right" related to challenging the Coleman Act's constitutionality or that Southern intended to waive a challenge to the Coleman Act.

Accordingly, the Court finds that neither laches nor waiver present issues of material fact barring Rule 12(c) relief.

## V.    SOUTHERN'S MOTION FOR JUDGMENT ON THE PLEADINGS

### A.      Dormant Commerce Clause

The Commerce Clause in Article I, Section 8, of the United States Constitution grants Congress the power to regulate interstate commerce.  U.S. Const. art. I, § 8, cl. 3. The Commerce Clause "has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce."  *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 98 (1994); *see also S.D Farm Bureau, Inc.*, 340 F.3d at 592 ("The dormant Commerce Clause is the negative implication of the Commerce Clause: states may not enact laws that discriminate against or unduly burden interstate commerce.").  State law discriminates in violation of the dormant Commerce Clause when the law "mandate[s] 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Granholm,* 544 U.S. at 472 (quoting *Or. Waste Sys.*, 511 U.S. at 99).

Under Section 2 of the Twenty First Amendment, States are allowed to regulate the "transportation or importation . . . for delivery or use therein of intoxicating liquors." U.S. Const. amend. XXI, § 2.  While the Supreme Court initially interpreted Section 2 as conferring the power to regulate alcohol in ways that would normally violate the dormant Commerce Clause, the Supreme Court's modern jurisprudence recognizes that Section 2 does not provide a blanket authorization to take actions violating other constitutional provisions.  *Granholm*, 544 U.S. at 486–87.  Thus, although the three-tiered distribution

system itself is unquestionably legitimate, previous cases establish that the ways in which a State implements a three-tiered system under the Twenty-first Amendment are not immune from dormant Commerce Clause scrutiny.  Instead, the appropriate question is whether "the principles underlying the Twenty-first Amendment are sufficiently implicated . . .to outweigh the Commerce Clause principles that would otherwise be offended."  *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 275 (1984).

The Supreme Court has further clarified the amorphous relationship between the constitutional provisions by stating that the Twenty-first Amendment provides States with the ability to enact measures that are "appropriate to address the public health and safety effects of alcohol use and [] serve other legitimate interests" but prohibits "States [from adopting] protectionist measures with no demonstrable connection to those interests."  *Tenn. Wine & Spirits*, 139 S. Ct. at 2474.  The Eighth Circuit has closely followed this tenant by upholding laws that "'serve[] valid health, safety, and regulatory interests'" as well as licensing requirements and restrictions that are "essential" components of a three-tiered system.  *Sarasota Wine Market, LLC v. Schmitt*, 987 F.3d 1171, 1181–82 (8th Cir. 2021) (citing *S. Wine and Spirits of Am., Inc., v. Div. of Alcohol and Tabaco* Control, 731 F.3d 799, 810–11 (8th Cir. 2013)).[5]

---

[5] Numerous courts have similarly upheld essential or inherent components of a state's three-tiered system when considering a dormant Commerce Clause challenge.  *See Tenn. Wine & Spirits,* 139 S. Ct. at 2471 (invalidating a state liquor law under the dormant Commerce Clause when it "[was] not an essential feature of a three-tiered scheme[.]"); *Byrd v. Tenn. Wine & Spirits Retailers Ass'n*, 883 F.3d 608, 623 (6th Cir. 2018) ("[R]equiring wholesaler or retailer businesses to be physically located within Tennessee may be an inherent aspect of a three-tier system[.]");

16

Therefore, this Court must decide whether the Coleman Act violates the dormant Commerce Clause and, if so, whether the unconstitutional aspects are essential components of Minnesota's three-tiered system or otherwise serve valid interests that cannot be achieved without discriminatory means.

### 1.    Facial Discrimination

A state law that is challenged on dormant Commerce Clause grounds is subject to a two-step analysis.  The Court first considers whether the challenged law discriminates against interstate commerce.  *Or. Waste Sys.,* 511 U.S. at 99.  If the statute is discriminatory, it is "*per se* invalid."  *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.,* 511 U.S. 383, 392 (1994).  If the law is not discriminatory, the second step of analysis requires that the law be struck down only if the burden it imposes on interstate commerce "is clearly excessive in relation to its putative local benefits."  *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970).

The Supreme Court recognizes three forms of discrimination against out-of-state interests.  First, a state law may have an impermissible discriminatory purpose.  *Bacchus Imports,* 468 U.S. at 270.  Second, a law may facially discriminate against out-of-state

---

*Cooper v. Tex. Alcoholic Beverage Comm'n*, 820 F.3d 730, 743 (5th Cir. 2016) (distinctions between in-state and out-of-state retailers and wholesalers are permissible "if they are an inherent aspect of the three-tier system."); *Wine Country Gift Baskets.com v. Steen*, 612 F.3d 809, 818 (5th Cir. 2010) ("[D]iscrimination that would be questionable, then, is that which is not inherent in the three-tier system itself."); *Brooks v. Vassar*, 462 F.3d 341, 352 (4th Cir. 2006) (noting that challenging the requirement that out-of-state retailers sell through Virginia's three-tier system "is nothing different than an argument challenging the three tier system itself.").

interests.  *Chem. Waste Mgmt. v. Hunt,* 504 U.S. 334, 342 (1992).  Third and lastly, a law may have a discriminatory effect.  *Maine v. Taylor,* 477 U.S. 131, 148 n. 19 (1986).

Southern argues that the Coleman Act is facially discriminatory and prohibits out-of-state products and producers from establishing exclusive distributorships while explicitly exempting Minnesota producers and products.  Intervenors contend that the Coleman Act is not discriminatory because it applies the same requirements to both in-state and out-of-state importers and additionally provides a mechanism allowing out-of-state producers to qualify for the same exemptions that in-state producers enjoy.

The Court is not persuaded by Intervenors' arguments.  A law is facially discriminatory if it expressly provides for "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."  *Or. Waste Sys.,* 511 U.S. at 99.  The Coleman Act explicitly permits alcohol produced or further refined in Minnesota to be distributed through exclusive wholesaler agreements in order to circumvent the open wholesaling requirement imposed on alcohol produced outside of Minnesota.  Although Intervenors are correct that the Coleman Act applies equally to all **importers**, the Coleman Act still disfavor **out-of-state-producers** by exempting Minnesota producers from the wholesaling requirement.  Further, Intervenors' argument does not remedy the fact that the Coleman Act impermissibly discriminates against **out-of-state products** by prohibiting exclusive dealerships in the first place.

Intervenors' argument that out-of-state producers and products may qualify for the exemptions in-state producers and products are privy to is similarly unpersuasive. It is immaterial that out-of-state producers can qualify for the Coleman Act's exemptions by producing or further refining their product in Minnesota. A law that discriminates between in-state and out-of-state economic interests is impermissible regardless of the degree of disparate treatment because "the magnitude and scope of the discrimination have no bearing on the determinative question," which is "whether discrimination has occurred." *Assoc. Indus. of Mo. v. Lohman*, 511 U.S. 641, 650 (1994). The crucial fact is that the Coleman Act applies different requirements to out-of-state producers and products that would necessitate a workaround in the first place. Moreover, it can hardly be said that a law comports with the dormant Commerce Clause by forcing out-of-state producers to further distill, refine, or blend their product within the state to be treated the same as domestic products. Minn. Stat. § 340A.307, subd. 4.

The Coleman Act only prohibits exclusive distributorships of alcohol produced outside of Minnesota and expressly favors in-state producers and products by allowing them to enter into such exclusive agreements. Accordingly, the Court finds that the Coleman Act facially imposes differential treatment of in-state and out-of-state economic interests and is facially discriminatory.

### 2.    Essential Element

Under the Twenty-first Amendment, the Coleman Act's open wholesaling requirement may still be a constitutional exercise of the State's right to regulate alcohol. The relevant question is whether the discriminatory provision is an essential component of a three-tiered system of regulation or otherwise "'serves valid health, safety, and regulatory interests'" for which there are no other non-discriminatory alternatives. *Sarasota*, 987 F.3d at 1181 (citing *S. Wine and Spirits of Am.*, 731 F.3d at 810–11); *Tenn. Wine & Spirits*, 139 S. Ct. at 2474, 2476.

Intervenors argue that the Coleman Act must be upheld because its open wholesaling requirement is an essential element of Minnesota's three-tiered system and serves valid interests by preventing market concentration, increasing competition, and reducing prices.  The Court finds that none of these reasons make the Coleman Act's discriminatory provision an essential function of a three-tiered system.

The Supreme Court in *Tennessee Wine & Spirits* held that the Twenty-first Amendment allows states to enact measures that its citizens believe are appropriate to address the public health and safety effects of alcohol use and to serve other legitimate interests, but it does not license the States to adopt protectionist measures with no demonstrable connection to those interests.  139 S. Ct. at 2474.  While striking down the law at issue, the Supreme Court noted that the law was "ill suited to promote responsible sales and consumption practices" and "there [were] obvious alternatives that better serve

that goal without discriminating against nonresidents."  139 S. Ct. at 2476.  In the Eighth

Circuit, courts have upheld licensing requirements as essential elements of a state's

three-tiered system when they were similar to laws that defined the extent and

requirements of the producer, wholesaler, and retailer tiers.  *S. Wine & Spirits of Am.,* 731

F.3d at 809 (citing *Granholm*, 544 U.S. at 489).  In *Sarasota*, the Eighth Circuit's most recent

case on the issue, the Eighth Circuit again found that a challenged licensure requirement

was an essential element defining the three-tiered system because the licensure

requirements applied even-handedly to all retailers and set forth the requirements

allowing retailers to sell alcohol directly to consumers.  987 F.3d at 1183–84.

Here, the Coleman Act does not attempt to even-handedly regulate any form of

Minnesota's three-tiered structure like the licensure requirements in *Sarasota*.  Similarly,

assuming that the Coleman Act was intended to reduce prices, as Intervenors assert, the

law is not analogous to the residency requirement at issue in *Southern Wine and Spirits*

that was intended to promote social responsibility and temperance*.*  731 F.3d at 811.

Instead, the Coleman Act attempts to regulate the manner in which out-of-state

producers offer their products while protecting in-state interests from the same

requirements.  In this light, the Coleman Act is more akin to *Tennessee Wine & Spirits* as

a law that is "ill suited to promote responsible sales and consumption practices" when

"there are obvious alternatives that better serve that goal without discriminating against

nonresidents." 139 S. Ct. at 2474, 2476.  As Intervenors acknowledge while arguing that

the Coleman Act is severable, there are a plethora of alternatives to discriminating against out-of-state producers and products—most easily by requiring **all** producers and products to be subject to open wholesaling and prohibited from exclusive distributorships. Indeed, current proposed legislation in both the Minnesota Senate and House of Representatives provides this exact remedy. *Compare* S.F. 3008, 92nd Leg., First Engrossment and H.F. 2767, 92nd Leg, As Introduced, *with* Minn. Stat. § 340A.307, subds. 1, 4.

In sum, the Coleman Act facially discriminates against out-of-state producers and products, is not an essential element of Minnesota's three-tiered system, and is ill suited to serve valid regulatory interests when non-discriminatory alternatives that better serve such goals exist. Accordingly, the Court finds that the Coleman Act's open-wholesaling requirement and prohibition against exclusive distributorships is unconstitutional.

### B.    Severability

The Court must also determine whether any of the Coleman Act's unconstitutional provisions are severable. Severability is a matter of state law. *See Leavitt v. Jane L.,* 518 U.S. 137, 139 (1996). The Minnesota statute governing severability provides that:

> Unless there is a provision in the law that the provisions shall not be severable, the provisions of all laws shall be severable. If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Minn. Stat. § 645.20.  The chapter encompassing the Coleman Act includes a severability clause.  Minn. Stat. §340A.910.  Therefore, the Court must consider whether the Coleman Act's provisions are sufficiently interconnected such that the legislature would not have enacted the statute in its severed form or whether the valid provisions would be incomplete and incapable of being executed in accordance with the legislative intent. Minn. Stat. § 645.20*.*

### 1.   The Void and Valid Provisions are Interconnected

Intervenors contend that subdivision 1, subdivision 2, and the exceptions in subdivision 4 of the Coleman Act are severable in various forms.  The Court will first consider whether "all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other."  *State ex rel. Grozbach v. Common Sch. Dist. No. 65*, 54 N.W.2d 130, 133 (Minn. 1952).

While interpreting Minnesota law, the Eighth Circuit has held that a statute is not severable when the valid sections were "conceived together as a unified effort to regulate certain practices[.]"  *Cellco P'ship v. Hatch,* 431 F.3d 1077, 1084 (8th Cir. 2005).  In *Cellco*, the Eighth Circuit found that three valid provisions—a definitional section and two sections regarding conduct ancillary to the heart of the legislation's purpose—worked in tandem with the void provision in order to achieve the legislature's intent.  *Id*.  Here,

subdivision 1 (nondiscriminatory sales), subdivision 2 (prohibited practices), and subdivision 4 (exceptions) are part of a singular scheme to regulate producers' sale of their products.  Because of their dependency on each other, it is unlikely that the Minnesota Legislature would have passed any of the subdivisions on their own. Subdivision 1 provides a general rule, subdivision 2 provides examples of conduct breaching the rule, and subdivision 4 provides exceptions to the rule and conduct described in subdivisions 1 and 2 respectively.

The subdivisions of the Coleman Act are connected in subject-matter,  depend on each other, and operate together for the same purpose.  The Court finds that the subdivisions of the Coleman Act are therefore sufficiently interconnected and not severable.

### 2.     The Valid Provision Would be Incapable of Being Executed in Accordance with the Legislature's Intent

Even if the provisions of the Coleman Act were not interconnected, the valid provisions would be "incomplete and [] incapable of being executed in accordance with the legislative intent."  Minn. Stat. § 645.20.

Both Intervenors and Southern direct the Court to *Archer Daniels Midland Co. v. State ex rel. Allen,* 315 N.W.2d 597 (Minn. 1982) to support their respective positions regarding severability of the Coleman Act.  In *Archer Daniels Midland*, the Minnesota Supreme Court refused to sever a discriminatory tax on out-of-state products after

determining that doing so would violate the legislature's intent. Specifically, the court held that:

> [T]he unconstitutional language of the Act explicitly limits the four-cent per gallon tax reduction to Minnesota gasohol. This indicates a legislative intent to benefit only intrastate concerns. If the unconstitutional language of the Act were stricken and the Act's tax reduction extended to out-of-state concerns such as [plaintiff], this legislative intent would be completely frustrated. We conclude, therefore, that the remaining provisions of the Act, standing alone, are incapable of being executed in accordance with the legislative intent."

*Archer Daniels Midland Co.,* 315 N.W.2d at 600.  Intervenors contend that the *Archer Daniels* court invalidated the discriminatory law *in toto* because the "legislative intent [wa]s not at all clear." *Id.*  However, this is an incorrect reading of the case.  In the quotation Intervenors rely on, the *Archer Daniels* court was considering an argument that the discriminatory tax should be severed under *State v. Minnesota Federal Savings & Loan Ass'n*, 15 N.W.2d 568 (1944). *Id.*  The *Archer Daniels* court noted that the *Minnesota Federal Savings* court severed a discriminatory portion of an income tax statute because there was a clear legislative intent to sustain a limited application of the tax rather than to eliminate it completely. *Id*.  The *Archer Daniels* court then noted that "[i]n this case, however, a similar legislative intent is not at all clear" and instead found that the legislature only intended to benefit intrastate concerns.  *Id.*  Contrary to Intervenors contentions, the *Archer Daniels* court did not refuse to sever the discriminatory tax because of a lack of legislative intent but, rather, refused to sever the discriminatory

language of the tax because the legislature intended to benefit in-state actors and striking the discriminatory language would frustrate this intent. *Id*.

Like *Archer Daniels*, the language of the Coleman Act is indicative of the Legislature's intent to benefit Minnesota producers and products by exempting them from open wholesaling. Moreover, the Legislature reaffirmed its intention when it amended the Coleman Act in response to an unfavorable Minnesota Supreme Court decision holding that alcohol processed within the state was regulated by the Coleman Act. *Compare Fed. Distillers*, 229 N.W.2d at 155–56, *with* Minn. Stat. § 340A.307, subd. 4(2). Because the Minnesota Legislature initially exempted in-state producers and products from the Coleman Act and later doubled-down by amending the Coleman Act to rectify an unfavorable Minnesota Supreme Court decision applying the law to in-state products, the Court finds that severing the discriminatory language of the Coleman Act would not be consistent with the Legislature's intent and is not the appropriate remedy.

### 3. Certification to the Minnesota Supreme Court

Intervenors lastly argue that the Court should certify the issue of severability to the Minnesota Supreme Court. The Court finds this step unnecessary.

Minnesota law provides that the Minnesota Supreme Court "may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this state." Minn.

Stat. § 480.065, subd. 3.  Use of a State's certification procedure by a federal district court rests in the court's sound discretion.  *Lehman Bros. v. Schein,* 416 U.S. 386, 390–91 (1974); *Allstate Ins. Co. v. Steele,* 74 F.3d 878, 881–82 (8th Cir. 1996).  Although certification may "in the long run save time, energy, and resources and help[ ] build a cooperative judicial federalism," it is never obligatory, even when state law is in doubt.  *Lehman Bros.,* 416 U.S. at 390–91.  A federal court's "most important consideration" in deciding whether to certify a question to a state court is whether it "finds itself genuinely uncertain about a question of state law[.]" *Johnson v. John Deere Co.,* 935 F.2d 151, 153 (8th Cir.1991) (quoting *Tidler v. Eli Lilly & Co.,* 851 F.2d 418, 426 (D.C. Cir. 1988)).  Certification "is not a procedure by which federal courts may abdicate their responsibility to decide a legal issue when the relevant sources of state law available to it provide a discernible path for the court to follow."  *Tidler,* 851 F.2d at 426.  Absent a "'close' question of state law or the lack of state sources, a federal court should determine all the issues before it." *Johnson,* 935 F.2d at 154 (citing *Perkins v. Clark Equip. Co.,* 823 F.2d 207, 209 (8th Cir. 1987)).

Though there are multiple overlapping arguments concerning the severability of the Coleman Act, neither the arguments nor the principles underlying the severability issue are so complex that the Court is faced with a close or genuine question.  The Court will decline to certify the severability issue to the Minnesota Supreme Court.

For the forgoing reasons, the Court finds that the Coleman Act's discriminatory provisions are unconstitutional and, because the law in not severable, is unconstitutional.

27

Intervenors' challenges to Southern's standing are unsuccessful, as is their attempt to preclude Rule 12(c) relief through their affirmative defenses.  The Court will therefore grant Southern's Motion for Judgment on the Pleadings.[6]

## VI.    JOINT MOTION FOR STIPULATED JUDGMENT

Because Southern's Motion for Judgment on the Pleadings is granted, the Court need not consider the Joint Motion for Stipulated Judgment and will deny the motion as moot.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Judgement on the Pleadings [Docket No. 84] is **GRANTED** as follows:

    a. The Coleman Act, as reflected in Minn. Stat. §340A.307, is **DECLARED** facially unconstitutional as a violation of the dormant Commerce Clause of the United States Constitution.

    b. Defendant John Harrington, in his official capacity as Commissioner of the Minnesota Department of Public Safety, is **PERMANENTLY ENJOINED** from enforcing the Coleman Act, as reflected in Minn. Stat. §340A.307.

---

[6] Intervenors'

2. Entry of judgment is **STAYED** for sixty (60) days pending the resolution of the proposed legislation in the Minnesota Legislature.

3. Plaintiffs' and Defendant's Joint Motion for Stipulated Judgment [Docket No. 10] is **DENIED as MOOT**.

4. Intervenors' Objection to the Magistrate Judge's Order Denying the Motion to Stay [Docket No. 92] is **DENIED as MOOT**.

5. Intervenors' Objection to the Magistrate Judge's Order Denying the Motion to Amend [Docket No. 132] is **DENIED as MOOT**.

6. Plaintiffs', Defendant's, and Intervenors' Joint Motion Regarding Continued Sealing [Docket No. 133] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  March 29, 2022
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
Chief Judge
United States District Court